Altair Claudio FREIRE, Plaintiff,

v.

DEPARTMENT OF HOMELAND SE-
CURITY; Jeh Johnson, Secretary of
Homeland Security; Leon Rodriguez,
Director, U.S. Citizenship and Immi-
gration Services ("USCIS"); Loretta
E. Lynch, Attorney General of the
United States; Ron Rosenberg, Acting
Chief, USCIS Administrative Appeals
Office; Edward Newman, Director,
USCIS District 2; and Leah Van Mil-
gen, Director, USCIS Hartford Field
Office, Defendants.

Civil No. 3:13-cv-1202(AWT)

United States District Court,
D. Connecticut.

Signed February 18, 2016

Justin Conlon, Law Offices of Justin Conlon, Hartford, CT, for Plaintiff.

Carolyn Aiko Ikari, U.S. Attorney's Office, Hartford, CT, Troy David Liggett, U.S. Department of Justice, Washington, DC, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

Alvin W. Thompson, United States District Judge

The plaintiff, Altair Claudio Freire ("Freire") brings this action under the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq. ("APA"), seeking judicial review of the denial of his application for lawful permanent residence. The parties have filed cross motions for summary judgment. For the reasons set forth below, the defendants' motion is being granted and the plaintiff's motion is being denied.

## I. BACKGROUND

The plaintiff is a citizen of Brazil. In 1997, he attempted to enter the United States through Miami, Florida using a fraudulent visa. The Immigration and Naturalization Service ("INS") ordered him removed and warned him that he was "prohibited from entering, attempting to enter, or being in the United States for a period of 5 years from the date of [his] departure from the United States" as dictated by section 212(a)(9) of the Immigration and Nationality Act (INA). Certified Administrative Record ("CAR") 587. On October 4, 1997, Freire departed the United States for Brazil.

On or about August 22, 1999, Freire was apprehended by agents of the United States Coast Guard ("USCG") when the USCG encountered a boat containing 21 illegal aliens off the coast of Mission Beach, California. There were 18 Mexican citizens and three Brazilian citizens aboard, one of whom was Freire. They were all transported to the INS District Office in San Diego, California. While he was being detained, Freire gave a sworn statement that he was a Brazilian citizen without legal documents to enter the United States and that he had made arrangements with a smuggler to enter the United States. On August 23, 1999, Freire identified an individual in a lineup as the person who was the pilot of the vessel in the smuggling operation. On September 9, 1999, Freire was paroled into the United States as a material witness against the pilot, who was arrested on smuggling charges. Freire's parole was set to end on January 9, 2000. On October 19, 1999, he was notified that the pilot had pled guilty and that he was no longer needed as a material witness and was required to leave the United States. The surety of his bond was also notified. Freire was ordered to report to a deportation officer at 808 Front Street, San Diego, California on November 24, 1999 to effect his removal. He never appeared. On January 9, 2000, Freire's parole expired. On March 14, 2000, the INS prepared a removal order for Freire but never served it on him.

In 2001, Freire began the process of attempting to obtain permanent residence by means of an employment-based adjustment of status. The process involves three-steps, as described in Butt v. Gonzales, 500 F.3d 130, 132 n. 2 (2d Cir.2007):

> The process through which an alien pursues employment-based adjustment of status is as follows: First, the alien's prospective employer must file an application for a labor certification. If the Department of Labor certifies the application, the alien's prospective employer must then file a Form I-140, Immigrant Petition for Alien Worker, accompanied by the Labor Certification. If the Petition is approved, the alien, who must be residing in the U.S., must file a Form I-485 Application to Register Permanent Residence or Adjust Status.

Id. (citing Lendo v. Gonzales, 493 F.3d 439, 441–42 (4th Cir.2007)). On April 30, 2001, Freire's employer, Quality Landscaping, Inc., of Monroe, Connecticut, completed the first step by submitting an application to the U.S. Department of Labor ("DOL") for a labor certification for a machine operator position on behalf of Freire. On April 30, 2002, DOL approved the application for a labor certification. On May 21, 2002, Quality Landscaping, Inc. commenced the second step by filing a Form I-140 Petition for Alien Worker with the INS. The petition was approved on August 27, 2003. On March 13, 2007, Freire submitted a Form I-485 application for adjustment of status.[1] He provided a copy of his birth certificate, his Brazilian passport, and other documents including an affidavit attesting to his first attempted entry into the United States through Miami. On April 4, 2009, U.S. Citizenship and Immigration Services ("USCIS") denied Freire's application, finding that he was "inadmissible to the United States under section 212(a)(9)(A)(i) of the INA." CAR 684.

On May 7, 2009, Freire filed a motion with USCIS to reopen and reconsider his Form I-485 application for adjustment of status. On May 7, 2009, he also filed a Form I-212 Application for Permission to

---

1. On November 7, 2002, submitted a Form I-485, Application to Register Permanent Residence or Adjust Status, requesting an adjustment of status pursuant to 8 U.S.C. § 1255(a). He withdrew this application on September 22, 2004.

Reapply for Admission into the United States after Deportation or Removal, seeking a waiver of his inadmissibility so he could apply for adjustment of status. On May 11, 2011, USCIS granted his motion to reopen the Form I-485 application. On May 25, 2011, USCIS denied his application for adjustment of status, finding that he was inadmissible under both INA § 212(a)(6)(C)(i) and INA § 212 (a)(9)(C)(i)(II). CAR 114-17. Also on May 25, 2011, USCIS denied his application for permission to reapply for admission after removal, explaining that he was inadmissible under INA § 212(a)(9)(C)(i)(II) and had not met the criteria for an exception as provided for by INA 212(a)(9)(C)(ii). CAR 118-19.

On June 27, 2011, Freire filed a motion for USCIS to reconsider the denial of his application for adjustment of status, and on September 19, 2011, USCIS issued an amended denial of his application. USCIS denied his application "as a matter of law" on the ground that he was "inadmissible pursuant to INA § 212(a)(6)(C)(i) based on [his] use of a fraudulent visa to enter the United States." CAR 92. USCIS noted that though a waiver is available for that ground of inadmissibility, he was also "inadmissible pursuant to INA § 212(a)(9)(C)(i)(II) based on [his] attempted re-entry without inspection after having been removed." CAR 92. Having provided no evidence that he had overcome that ground of inadmissibility, USCIS found that "[Freire] ha[d] not established that [he] [was] eligible to receive an immigrant visa and [was] eligible to be admitted to the United States as required by section 245 of the Immigration and Nationality Act." CAR 92.

Freire appealed the denial of his Form I-212 waiver application. The USCIS Administrative Appeals Office ("AAO") denied his appeal on May 29, 2013. The AAO found:

[T]he record evidence establishes that the applicant attempted to reenter the United States after having been ordered removed under section 235(b)(1) of the Act without being admitted. As such, the applicant is inadmissible under 212(a)(9)(C)(i)(II) of the Act. ... An alien who is inadmissible under section 212(a)(9)(C) of the Act may not apply for consent to reapply for admission unless the alien has been outside the United States for more than ten years since the date of the alien's last departure from the United States.

CAR 15-16. Accordingly, the AAO found Freire to be "statutorily ineligible to apply for permission to reapply for admission." CAR 16. Because the AAO found him inadmissible on these grounds, it found that "no purpose would be served in determining whether the applicant is eligible for an Application for Permission to Reapply for Admission Into the United States After Deportation or Removal under section 212(a)(9)(A)(i) of the Act." CAR 16.

Freire was issued a final order of removal by the Board of Immigration Appeals on July 10, 2013.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S.Ct. 2548.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990)).

## III. DISCUSSION

The plaintiff has moved for summary judgment, arguing that "[t]he Defendants (or "agency") erred and acted arbitrarily in denying the Plaintiff's application for lawful permanent residence." (Motion for Summary Judgment (Doc. No. 36) ("Plaintiff's Motion") at 1.) The defendants filed a cross motion for summary judgment, arguing that "[t]he USCIS decision to deny Mr. Freire's Form I-485 adjustment application and the AAO's decision to deny his Form I-212 waiver application were not arbitrary, capricious, an abuse of discretion or contrary to law." (Defendants' Motion for Summary Judgment (Doc. No. 35) ("Defendants' Motion") at 16).

Freire's Form I-485 and Form I-212 applications relate to his attempt to receive an adjustment of his status to that of a permanent resident. The statute that provides for such an adjustment is 8 U.S.C. § 1255. In relevant part, it provides,

(a) The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255.

Form I-485 is an application for an adjustment of status pursuant to § 1255. If an alien is ineligible for an adjustment of status under § 1255, he or she can also submit a Form I-212 application to seek waiver of that ineligibility for an adjustment of status. On September 19, 2011, USCIS denied Freire's application for adjustment of status, finding that he was inadmissible under 8 U.S.C. § 1182 (a)(6)(C)(i) and 8 U.S.C. § 1182(a)(9)(C)(i)(II).

Freire had filed a Form I-212 application seeking a waiver of his inadmissibility pursuant to 8 U.S.C. § 1182(a)(9)(C)(ii), which provides:

Clause (i) shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Secretary of Homeland Security has consented to the alien's reapplying for admission.

*Id.* On May 29, 2013, the AAO denied his waiver application.

## A. Reviewability of Agency Action

■ The plaintiff asserts that "jurisdiction is conferred on this court by 5 U.S.C. §§ 701-706 (Administrative Procedure Act), 28 U.S.C. § 1331 (Federal Question Statute), and 28 U.S.C. § 2201 (Declaratory Judgment Act)." (Complaint ¶ 4.)

The court concludes that it has jurisdiction to review both the USCIS decision and the AAO decision. First, the court concludes that both decisions are reviewable because they were non-discretionary eligibility determinations that present purely legal questions. See Rosario v. Holder, 627 F.3d 58, 61 (2d Cir.2010) (distinguishing nondiscretionary agency decisions that are reviewable and discretionary agency decisions that are not); Rodriguez v. Gonzales, 451 F.3d 60, 62 (2d Cir.2006); see also Sepulveda v. Gonzales, 407 F.3d 59, 62–63 (2d Cir.2005); Pinho v. Gonzales, 432 F.3d 193, 203–04 (3d Cir.2005). Second, the court concludes that district court review, as opposed to appellate court review, of the USCIS and AAO decisions is proper. See Mamigonian v. Biggs, 710 F.3d 936, 946 (9th Cir.2013) ("district courts maintain jurisdiction to hear cases under the APA challenging final agency determinations respecting eligibility for the immigration benefits enumerated in § 1252(a)(2)(B)(i) made on nondiscretionary grounds when there are no pending removal proceedings at which the alien could seek those benefits."); Mejia v. Rodriguez v. U.S. Dept. of Homeland Sec., 562 F.3d 1137, 1144–45, 1145 n. 15 (11th Cir. 2009) (finding that the district court had jurisdiction to review a "non-discretionary, statutory eligibility decision[ ] made by the USCIS"); Pinho v. Gonzales, 432 F.3d 193 (3d Cir.2005) (finding that the district court had jurisdiction to review a "final and non-discretionary" AAO decision).

Therefore, the court finds that it has jurisdiction to review the USCIS and AAO decisions at issue in this case.

## B. Standard of Review

■ The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" is entitled to judicial review of such a claim. 5 U.S.C. § 702. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party...." Id. "Under the APA, judicial review of an agency decision is typically limited to the administrative record." Kappos v. Hyatt, —— U.S. ——, 132 S.Ct. 1690, 1696, 182 L.Ed.2d 704 (2012).

■ A district court's review of agency action "is to be searching and careful, [but] the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Under the arbitrary and capricious standard, a reviewing court must "determine whether the agency has considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a rational connection between the facts found and the choice made." Gully v. Nat'l Credit Union Admin. Bd., 341 F.3d 155, 163 (2d Cir.2003).

## C. Denial of Form I-485 Application

█ The plaintiff filed his second Form I-485 Application to Register Permanent Resident of Adjust Status on March 21, 2007. His application was denied on April 4, 2009 on the ground that he was inadmissible pursuant to INA § 212(a)(9)(A)(i). On May 7, 2009, Freire filed a motion to reopen and reconsider the decision. On May 20, 2011, his application was reopened for further review. Then, his application was denied again on September 19, 2011.

The court reviews the September 19, 2011 decision of USCIS. USCIS denied Freire's application for adjustment of status, finding him inadmissible pursuant to INA § 212(a)(6)(C)(i) as well as § 212(a)(9)(C)(i)(II). See CAR 92.

INA § 212(a)(6)(C)(i)(2010) provides: Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

Id.

INA § 212(a)(9)(C)(i)(II)(2010) provides: Any alien who ... has been ordered removed under section 235(b)(1) [8 USCS § 1225(b)(1), section 240 [8 USCS § 1229a], or any other provision of law, and who enters or attempts to reenter the United States without being admitted is inadmissible.

Id.

USCIS reviewed the record, which provides sufficient evidence for its denial of Freire's application for adjustment of status. First, the record supports USCIS's finding that Freire attempted to illegally enter the United States on July 27, 1991 through Miami, Florida by using a fraudulently obtained non-immigrant visa. The record contains a copy of the INS's "Determination of Inadmissibility" and "Order of Removal Under Section 235(b)(1) of the Act." CAR 572, 862. A July 27, 1997 INS memorandum states that Freire "arrived in the company of a known smuggler [and] admitted to submitting false supporting documents for [a] visa." CAR 889. Freire was notified that he had "been found inadmissible to the United States under the provisions of section 212(a) of the Immigration and Nationality Act (Act) and ordered ... removed by an immigration officer in proceedings pursuant to section 235(b)(1) of the Act." CAR 583. He was further warned that "[i]n accordance with the provisions of section 212(a)(9) of the Act, you are prohibited from entering, attempting to enter, or being in the United States for a period of 5 years from the date of your departure from the United States as a consequence of that order." CAR 583. Finally, the notice explains that "[a]fter your departure or removal has been effected, if you desire to reenter the United States within the period during which you are barred, you must request and obtain permission from the Attorney General to reapply for admission into the United States. You must obtain such permission prior to commencing your travel to the United States." CAR 583 (emphasis added). Freire signed this form, and his fingerprint was put on the form. Based on the evidence contained in the record, USCIS's finding that Freire had "by fraud of willfully misrepresenting a material fact ... sought to procure or ha[d] procured ... a visa, other documentation, or admission into the United States" and that he "ha[d] been ordered removed under section 235(b)(1)" was not arbitrary, capricious, an abuse of discretion, or contrary to law.

The record also supports USCIS's finding that Freire attempted to reenter the United States in August of 1999. Freire concedes that "he had an intention to attempt to illegally enter" the United States.

(See Opposition to Defendants' Motion for Summary Judgment (Doc. No. 39) ("Plaintiff's Opposition"), at 6.) In a sworn statement, summarized in the Form I-213 report, Freire admitted that "[h]e made the smuggling arrangements to be smuggled into the United States." CAR 575. He was escorted from Brazil, to Guatemala, to Mexico, where he boarded a small boat in Ensenada to travel to the United States. He traveled on the small boat for about a half an hour and then boarded the larger boat that was ultimately intercepted by the USCG. The boat was intercepted off the coast of Mission Beach, California.

Although Freire concedes that he _intended_ to attempt to illegally reenter the United States, he argues that there is insufficient evidence in the record to show that "he proceeded far enough along in his plan for it to qualify as an attempted illegal re-entry." (Plaintiff's Opposition at 6.) Freire argues that "there was simply too much room/time for [him] to change his mind and abort mission for his actions to qualify as an attempt." (Plaintiff's Opposition, at 6.) The record contains no evidence to indicate that he ever changed his mind. His intent, as articulated by him, and his repeated steps towards that goal give every indication that he was not going to abort his mission to enter the United States. The fact that USCIS did not consider such a remote possibility does not render its decision arbitrary, capricious, an abuse of discretion, or contrary to law.

After a careful review of the record, the court finds that USCIS "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a rational connection between the facts found and the choice made." Gully,

341 F.3d at 163. The record, which includes the admission by the plaintiff, supports the finding that Freire attempted to reenter the United States after having been previously removed and was therefore inadmissible.

### D. Denial of Form I-212 Waiver Application [2]

The defendants contend that the Administrative Appeals Office's ("AAO") May 29, 2013 decision denying Freire's Form I-212 waiver application is not arbitrary, capricious, an abuse of discretion, or contrary to law. Freire had been found inadmissible under both 8 U.S.C. § 1182(a)(9)(A)(i) and § 1182(a)(9)(C)(i)(II). On May 7, 2009 he filed a Form I-212 application a seeking waiver of inadmissibility pursuant to 8 U.S.C. § 1182(a)(9)(A)(iii) and § 1182(a)(9)(C)(ii). Section 1182(a)(9)(A)(i) and (iii) of Title 8 of the United States Code provide:

(i) Arriving aliens

Any alien who has been ordered removed under section 1225(b)(1) of this title or at the end of proceedings under section 1229a of this title initiated upon the alien's arrival in the United States and who again seeks admission within 5 years of the date of such removal (or within 20 years in the case of a second or subsequent removal or at any time in the case of an alien convicted of an aggravated felony) is inadmissible.

(iii) Exception

Clauses (i) and (ii) shall not apply to an alien seeking admission within a period if, prior to the date of the alien's reembarkation at a place outside the United States or attempt to be admitted from

---

**2.** In the plaintiff's Opposition he refers to "the agency's mischaracterization of the administrative record" and refers to the "agency's decision." He never clarifies whether he is attacking the USCIS decision or the AAO decision. Since he cites the AAO decision, the court takes his challenges as challenges to the AAO decision.

foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission.

Id. Section 1182(a)(9)(C)(i)(II) and (ii) of Title 8 of the United States Code provide:

(i) In general

Any alien who—

(I) . . .

(II) has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law . . . and who enters or attempts to reenter the United States without being admitted is inadmissible.

(ii) Exception

Clause (i) shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Secretary of Homeland Security has consented to the alien's reapplying for admission.

Id. On May 25, 2011, USCIS denied his waiver application on the grounds that he was inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(II) and ineligible for a waiver under 8 U.S.C. § 1182(a)(9)(C)(ii). See CAR 118-19. Freire appealed to the AAO. The court reviews the AAO May 29, 2013 opinion.

The AAO conducted a de novo review of the field officer's May 25, 2011 decision denying the plaintiff's application for a waiver. The AAO first evaluated the effectuation of Freire's 1997 removal. In particular, the AAO assessed the validity of the Form I-860 Notice and Order of Expedited Removal and the Form I-296 Notice to Alien Ordered Removed/Departure Verification Form. Finding that both forms were duly executed, the AAO concluded that "[t]he record therefore contains sufficient evidence of a removal order entered against the applicant, and of service and notice of such an order upon him." CAR 13.

The AAO then turned to the 1999 attempt to re-enter the United States. The AAO found that the Form I-213 Record of Deportable/Inadmissible Alien document was "sufficiently reliable so as to serve as a contemporaneous document of the circumstances surrounding the applicant's interception." CAR 15. Finding no evidence undermining its "inherent trustworthiness," the AAO found it to be "admissible as evidence to prove alienage and inadmissibility." CAR 15. The AAO found the contention by the plaintiff's counsel that he was rescued from a sinking ship to be an unsupported assertion, as the plaintiff did not provide a corroborating narrative of the events nor was there any documentary evidence supporting that contention. Accordingly, the AAO found "that the record evidence establishes the applicant attempted to reenter the United States after having been ordered removed under section 235(b)(1) of the Act without being admitted. As such, the applicant is inadmissible under section 212(a)(9)(C)(i)(II) of the Act." CAR 15. The AAO also noted that the fact that Freire was paroled into the United States does not excuse his inadmissibility because "a parole is not an admission. See Section 101(a)(13)(B) of the Act." CAR 15. Finally, the AAO noted that Freire did not satisfy the 10-year waiting period requirement, nor did he file his application prior to reembarking for the United States. Accordingly, the AAO found him ineligible for the waiver on these grounds as well.

The plaintiff contends that the agency's decision was "grounded . . . on a material misrepresentation of the record" and, therefore, it should be vacated and this case remanded. (Plaintiff's Opposition at 2.) The plaintiff identifies the following misrepresentations: the AAO decision

states that the plaintiff was found in the forward compartment of the vessel, whereas the Form I-213 report states that he was found on the deck; the AAO decision states that the plaintiff paid $12,000 to be smuggled into the United States, whereas the Form I-213 report suggests that he only paid $6,000; the AAO decision states that the Form I-213 report was prepared on the day the plaintiff was apprehended and was based solely on information provided by the plaintiff, but the Form I-213 report was prepared two days after the plaintiff's apprehension and suggests that some information may have been provided by the USCG. The factual discrepancies identified by the plaintiff are accurate, so the AAO mischaracterized the aforementioned facts in its decision. Therefore, the court must determine whether these misrepresentations are material, and thus require vacating and remanding the agency decision.

■ "[A]n error does not require a remand if the remand would be pointless because it is clear that the agency would adhere to its prior decision in the absence of error." In Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 338 (2d Cir.2006) (citing NLRB v. Wyman–Gordon Co., 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (emphasizing that SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), "does not require that we convert judicial review of agency action into a ping-pong game" and that remand is not required where it "would be an idle and useless formality"); NLRB v. Am. Geri–Care, Inc., 697 F.2d 56, 64 (2d Cir.1982) ("[R]eversal and remand are [not] required each and every time an administrative agency assigns a wrong reason for its action; rather, [remand is required] only where there is a significant chance that but for the error, the agency might have reached a different result.") (emphasis in original)).

Here, remanding the case on the basis of the mischaracterizations identified by the plaintiff would be futile. If the agency had adhered strictly to the narrative of events as characterized in the Form I-213 report, i.e. Freire was found on the deck, he paid $6,000 total, the Form I-213 report was prepared two days after Freire's apprehension, and the report incorporated information provided by the USCG, the agency would have nonetheless decided to deny Freire's Form I-212 waiver application. The court accepts the Form I-213 report as "inherently trustworthy" because there is no evidence that the form "contains information that is inaccurate or obtained by coercion or duress". See In re Gomez–Gomez, 23 I. & N. Dec. 522 (2002). Accepting the report as true, the court concludes that it provides sufficient evidence to support a finding that Freire attempted to re-enter the United States.

Furthermore, there is no evidence that Freire applied for a waiver while living abroad and after spending 10 years outside the United States after his 1997 removal. Accordingly, notwithstanding the AAO's mischaracterization of the administrative record, vacating and remanding the agency's decision denying the plaintiff's I-212 wavier application would be futile.

In a similar vein, the plaintiff faults the agency for failing to make findings of fact on "critical issues in the case—including what direction the vessel was headed when it was encountered and how far from shore it was when encountered." (Plaintiff's Opposition, at 5.) The plaintiff alleges that "[w]ithout findings on these key issues (including whether the vessel was in the territorial waters of the US), the agency's decision is insufficient for review and must be reversed." (Plaintiff's Opposition, at 5.) The Form I-213 report reflects that the vessel was found by the USCG off the coast of Mission Beach. As stated above,

absent an indication of incorrect information, coercion or duress, the court accepts the Form I-213 report as inherently trustworthy and, therefore, accepts that the boat was found "in the waters of Mission Beach, California," as stated. Also, the plaintiff admitted that he was told when he boarded the first small boat that he was "[on] his way to the United States in the boat." CAR 575. The record suggests that he was still headed to the United States once he boarded the bigger vessel. Even without particularized findings regarding how far the vessel was from shore and what direction it was headed, there was sufficient evidence to support the AAO's finding that Freire attempted to re-enter the United States.

Accordingly, in light of the administrative record, the court finds that the AAO's denial of Freire's Form I-212 waiver application was not arbitrary, capricious, an abuse of discretion, or contrary to law.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment (Doc. No. 35) is hereby GRANTED, and the plaintiff's Motion for Summary Judgment (Doc. No. 36) is hereby DENIED.

The Clerk shall close this case.

It is so ordered.